UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RALPH FRED FISHER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:04-CV-338 RM |
| ) | |
| DAVID HOBBS AND ) | |
| THE TOWN OF MILFORD, ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Ralph Fred Fisher seeks damages from the defendants under federal and state law for allegedly being falsely arrested and imprisoned, maliciously prosecuted, and subjected to excessive use of force. Mr. Hobbs and the Town of Milford seek summary judgment on all claims. The record reflects no genuine issues of material fact as to Mr. Fisher's federal claims, so the court grants summary judgment on the federal claims and remands the state law claims to the Kosciusko Circuit Court for further proceedings.

STANDARD OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant

is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

FACTS

As appropriate at the summary judgment stage, the following facts are taken in the light most favorable to Mr. Fisher. On January 15, 2001, the Milford Police Department received information that Ms. Kathy Vroman was missing. Their investigation disclosed that she had been killed at a used car business owned by Mr. Jason Fisher (the plaintiff's son) on or about January 15, 2001.

While the weapon used had not been found, Ms. Vroman's body had been transported from the place of her killing to the state of Michigan. Authorities arrested Jason Fisher and charged him with Ms. Vroman's murder.

After Jason Fisher's arrest, he implicated his father, Mr. Fred Fisher, as the person who killed Ms. Vroman. Jason Fisher gave the prosecuting attorney, Charles Waggoner, a first-hand account of the events surrounding Ms. Vroman's untimely death and Fred Fisher's role in it. Mr. Waggoner presented this new evidence to Marshal David Hobbs along with the opinion that Jason Fisher's statement was trustworthy. Marshal Hobbs reviewed the written statement in light of the other evidence discovered in the investigation, including the statements of Fred Fisher and Larry Grant, and found he agreed with Mr. Waggoner.

On January 3, 2002, Marshal Hobbs signed a probable cause affidavit and information charging Mr. Fisher with Ms. Vroman's murder. Marshal Hobbs and Mr. Waggoner submitted the information for the murder charge to Kosciusko Circuit Judge Rex Reed, who found probable cause that Mr. Fisher committed the crime of murder. Pursuant to this judicial order, Fred Fisher was arrested by several unidentified officers and has since developed an injury to his shoulder.

ANALYSIS

Mr. Fisher asserts four substantive claims: (1) a claim under 42 U.S.C. § 1983 for excessive use of force in violation of the Fourth Amendment; (2) a claim under § 1983 for false arrest and false imprisonment (alternatively labeled

malicious prosecution) in violation of the Fourth Amendment; (3) a state law claim for false arrest and false imprisonment; and (4) a state law claim for assault and battery.[1] Marshal Hobbs asserts he was not present at the time the alleged excessive use of force was inflicted on Mr. Fisher, that probable cause existed to arrest Mr. Fisher for murder, and that he enjoys qualified immunity for signing and submitting the charging papers. The Town of Milford asserts the plaintiff has not shown any legal reason for its liability under § 1983.

*42 U.S.C. § 1983 CLAIMS*

To prevail under § 1983 against Marshal Hobbs on the excessive use of force claim, Mr. Fisher must show that Marshal Hobbs caused or had actual knowledge of the allegedly unreasonable force used during the arrest. *See* Luellen v. City of East Chicago, 350 F.3d 604, 611 (7th Cir. 2003) (a § 1983 plaintiff "not only must

---

[1] There was some confusion as to which federal right Mr. Fisher brought his § 1983 claims. Mr. Fisher's complaint affixes certain labels to his claims that he now says were erroneous. In the beginning of Mr. Fisher's memorandum, he seemed to abandon his Fourth Amendment claims for false arrest and false imprisonment in lieu of a malicious prosecution claim under the Fourteenth Amendment. Plaintiff's Memorandum of Law in Response to Defendants' Motion for Summary Judgment at p.2. ("While plead [sic] in separate Counts of the Complaint, the Plaintiff believes the allegations of False Imprisonment and False Arrest are in reality part of his claim of Malicious Prosecution.")

   Mr. Fisher later retracts this implication and reaffirms his intention to argue this case under the Fourth Amendment only. Plaintiff's Memorandum of Law in Response to Defendants' Motion for Summary Judgment at pp. 3-4. ("While the Plaintiff has captioned his allegation as malicious prosecution, and this court has also used the term in its Order of December 7, 2004, there really is, in the plaintiff's opinion, no federal malicious prosecution cause of action . . . The Plaintiff believes he has a Fourth Amendment right to be free from unreasonable seizures and the right under the Fourth Amendment to be free from excessive use of force used to effectuate his arrest.") As Mr. Fisher's memorandum frames his arguments only under the Fourth Amendment, the court analyzes his § 1983 claims as arising only under that amendment.

establish that his constitutional rights were violated, he also must show that each individual defendant caused the deprivation of a federal right." (quotations and citations omitted)); *see also* Luck v. Rovenstine, 168 F.3d 323, 327 (7th Cir. 1999) (when a § 1983 plaintiff did not show direct contact with the defendant during the alleged Fourth Amendment violation, nor actual knowledge of the alleged Fourth Amendment violation, summary judgment was proper). To make this showing, Mr. Fisher must submit competent argument and evidence showing he is entitled to proceed. Sanders v. Village of Dixmoor, Ill., 178 F.3d 869, 870 (7th Cir. 1999) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). If he does not do so, summary judgment against him is proper. FED. R. CIV. P. 56(e).

The record contains Marshal Hobb's uncontested affidavit stating he "did not take part in the physical arrest of Ralph Fisher, nor give any officer orders to use any degree of force upon him whatsoever in the course of that arrest." Affidavit of David Hobbs at p.3. The summary judgment record contains no affidavits or other evidence required by FED. R. CIV. P. 56(e) showing Marshal Hobbs was at the scene of the arrest or gave any orders to use any force to effectuate the arrest of the plaintiff. With no such evidence in the record, there is no genuine dispute on the issue of whether Marshal Hobbs personally caused or had actual knowledge of the alleged excessive use of force, and Mr. Fisher may not proceed on this claim.

5

Mr. Fisher's second § 1983 claim against Marshal Hobbs seeks damages for Marshal Hobbs's having signed the charging papers that led to Mr. Fisher's allegedly unreasonable arrest. Mr. Fisher alleges there was no probable cause when Marshal Hobbs signed the charging papers and imputes malicious motives to Marshal Hobbs's submitting the papers to the circuit court. Marshal Hobbs argues that probable cause existed, and in any event, the doctrine of qualified immunity shields him from any liability that could be imposed by this suit.

"Probable cause . . . is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution. This is true even where the defendant officers allegedly acted upon malicious motive." Mustafa v. City of Chicago, --- F.3d ----, No. 05-2101, 2006 WL 724828 at *2 ( 7th Cir., March 23, 2006).  For probable cause to exist, there need only be "a probability or substantial chance of criminally activity, not certainty that a crime was committed." Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 743 (7th Cir.2003).

Marshal Hobbs had probable cause to charge Mr. Fisher with murder if, when he signed and submitted the charging documents to the court, "the facts and circumstances within [Marshal Hobbs's] knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that [Mr. Fisher] had committed the crime[]." Id. The court evaluates probable cause not in retrospect, but rather looks at the relevant facts "as they would have appeared to a reasonable person in the position of the . . . officer,"

6

Mustafa v. City of Chicago, 2006 WL 724828 at *2 (quotations and citations omitted).

The record contains the affidavit for probable cause Marshal Hobbs relied on when he submitted the charging documents to Judge Reed. Contained in this affidavit is an uncontested [2] quotation from Jason Fisher about Fred Fisher's role in Ms. Vroman's death. This quotation includes Jason Fisher's rendition of a series of events immediately before (the plaintiff and Ms. Vroman arguing) and immediately after (the plaintiff standing over Ms. Vroman's body with a gun in his hand) Ms. Vroman's death. This statement provided the crucial evidence to charge the plaintiff with knowingly or intentionally killing Ms. Vroman, the required elements of murder as defined by IND. CODE § 35-42-1-1(1).

The plaintiff alleges no reasonable person would have believed Jason Fisher's statement because he was such an untrustworthy witness. Specifically, because Jason Fisher was under arrest for the very same murder charge he implicated his father for, he had an obvious motivation to lie. According to the plaintiff, Marshal Hobbs should have recognized Jason Fisher's untrustworthiness, conducted more investigation, and refused to sign the charging documents.

The question isn't what Marshal Hobbs should have done, but rather whether a reasonable person looking at the same facts would believe Mr. Fisher

---

[2] There is no evidence or argument alleging Marshal Hobbs altered or changed Jason Fisher's statement when he submitted it as part of the probable cause affidavit.

had committed murder. Mr. Fisher doesn't dispute that Jason Fisher's statement, if trustworthy, provides the basis for probable cause. Rather, he argues Jason Fisher's statement was so untrustworthy that no reasonable person could rely on it. Marshal Hobbs disagrees, stating he didn't rely solely on Jason Fisher's statement, but also on Mr. Waggoner's professional opinion as both a prosecuting attorney and law enforcement officer that Jason Fisher's statement was trustworthy. Marshal Hobbs asserts it was only after he reviewed Jason Fisher's statement in light of Mr. Waggoner's opinion and all the evidence uncovered during the investigation, including the plaintiff's own admission that he advised how to dispose of Ms. Vroman's body, that the charging papers were signed and submitted.

On this record, no reasonable trier of fact could find that Marshal Hobbs reliance on Jason Fisher's statement, Mr. Waggoner's opinion that the statement was trustworthy, and the plaintiff's own admission that he advised how to dispose of the body was unreasonable. A prudent person looking at these facts would put great weight on Mr. Waggoner's opinion on the veracity of Jason Fisher because it was Mr. Wagner who obtained the statement. Moreover, Mr. Waggoner's assessment of Jason Fisher's trustworthiness came late in the investigation of Ms. Vroman's death, and was made in light of all the evidence uncovered thus far. When Mr. Waggoner's opinion is coupled with the plaintiff's admission that he was aware of Ms. Vroman's death and advised on how to dispose of her body, a reasonable person would be left with a belief that the plaintiff had murdered Ms.

8

Vroman. Probable cause existed when Marshal Hobbs signed the charging documents.

Alternatively, the doctrine of qualified immunity shields Marshal Hobbs from this suit. Qualified immunity "shield[s] [Marshal Hobbs] from civil damages liability as long as [his] actions could reasonably have been thought consistent with the rights [he is] alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987)(citing Malley v. Briggs, 475 U.S. 335, 341 (1986)("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'")). This would be true even if there were no probable cause for the initial arrest, because the qualified immunity looks not to whether there was probable cause at the time of the alleged violation, but rather if "there was any reasonable basis to suppose there was probable cause." Kijonka v. Seitzinger, 363 F.3d 645, 6487 (7th Cir. 2004).

Mr. Fisher doesn't attack the validity of the arrest order signed by Judge Reed. Rather, Mr. Fisher argues Marshal Hobbs violated his Fourth Amendment right to be free from unreasonable search and seizure when he signed and submitted the charging papers to Judge Reed. Under this set of facts, Marshal Hobbs violated Mr. Fisher's constitutional rights only if a reasonably well-trained officer in his position should have known that the charging documents he signed and submitted did not establish probable cause, so he should not have applied for the arrest warrant in the first place. Beauchamp v. City of Noblesville, Ind., 320 F.3d at 742. At this stage, Mr. Fisher must point to some evidence (taken in the

9

light most favorable to him) showing Marshal Hobbs "knowingly or intentionally or with a reckless disregard for the truth, made false statements to [Judge Reed], and that the false statements were necessary to [Judge Reed's] determination that probable cause existed for the arrest[]." Id. If Mr. Fisher does not make either of these showings, he cannot proceed with his § 1983 claims.

Mr. Fisher alleges a single false statement by Marshal Hobbs to secure the judicial order for arrest. In the affidavit for probable cause, Marshal Hobbs stated that Mr. Fisher "helped Jason [Fisher]. . . with the transportation of the body of the victim." Information for Probable Cause at p.1. While Marshal Hobbs admits there was no evidence that Mr. Fisher ever physically transported Ms. Vroman's body, he doesn't agree that this admission renders his sworn statement false. While the court is inclined to agree with Marshal Hobbs, the disagreement does not require resolution. Even if the statement was intentionally and falsely made, the record contains no argument or evidence showing how it was necessary to Judge Reed's determination that probable cause existed for the arrest. Even taking the evidence in the light most favorable to the plaintiff, he cannot proceed with his claims on this basis.

Mr. Fisher doesn't attack the veracity of any other information Marshal Hobbs submitted to Judge Reed. Without some showing that Marshal Hobbs violated Mr. Fisher's constitutional rights when he signed and submitted the charging papers, Mr. Fisher cannot proceed with his claim. With no genuine issue as to whether Marshal Hobbs submitted false information that was necessary for

10

Judge Reed to order Mr. Fisher's arrest, the record supports a finding that Marshal Hobbs reasonably acted in a manner consistent with Mr. Fisher's constitutional rights. The doctrine of qualified immunity shields Marshal Hobbs from liability and this suit.

To prevail on his § 1983 claims against the Town of Milford, Mr. Fisher has the burden to show that: "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [Town]; which (3) was the proximate cause of his injury." Ienco v. City of Chicago, 286 F.3d 994, 998 (7th Cir. 2002) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690-691 (1978)).

Mr. Fisher hasn't identified evidence or advanced any argument against the Town of Milford that could satisfy his burden. This alone could provide the basis for granting summary judgment for the Town. Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him.").

The determination that Mr. Fisher cannot proceed with his § 1983 claims against Marshal Hobbs provides a second insurmountable obstacle to the claim against the town. "[A] municipality's liability for a constitutional injury [under § 1983] requires a finding that the individual officer is liable on the underlying

11

substantive claim." Treece v. Hochstetler, 213 F.3d 360, 364 (7th Cir. 2000) (quotations and citations omitted). Because no substantive claims remain against Marshall Hobbs under § 1983, the law provides no basis for liability on Mr. Fisher's § 1983 claims against the Town of Milford.

### *STATE LAW CLAIMS*

Mr. Fisher's remaining claims arise under Indiana law, implicating the liability and immunity of marshals and municipalities under the Indiana Tort Claims Act, a complex area of state law. In the absence of any surviving federal claims, the prudent course is to remand Mr. Fisher's state law claims back to the Kosciusko Superior Court where he originally filed them. *See* 28 U.S.C. § 1367(c)(1) and (3).

### CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART the defendants' motion for summary judgment [Doc. No. 27]. The motion is GRANTED in regards to both defendants as to all federal claims, and the motion is DENIED as to the state law claims. The remaining state law counts are REMANDED to the Kosciusko Circuit Court for further proceedings not inconsistent with this opinion. Because the material at issue in the defendants' motion did not materially affect the disposition of the case, the defendants' motion to strike is DENIED as moot [Doc. No. 33].

SO ORDERED.

ENTERED: <u>March 30, 2006</u>

<u>/s/ Robert L. Miller, Jr.</u>  
Chief Judge  
United States District Court